

**SEALED**

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

**FILED**
APR 0 9 2021
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| 1) UNITED STATES OF AMERICA and the STATE OF OKLAHOMA, | |
| Plaintiffs, *ex. Rel.* | |
| 2) SCOTT FOSTER, | CASE NO.: _ |
| Plaintiff-Relator, | JURY TRIAL DEMANDED |
| v. | FILED UNDER SEAL |
| 1) VERIZON COMMUNICATIONS INC., | 21 CV - 166 JFH - CDL |
| Defendant. | |

**COMPLAINT FOR VIOLATIONS
OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. SECTION 3729 et seq**

Plaintiff-Relator Scott Foster, on behalf of the United States of America and the State of Oklahoma, for his Complaint against Defendant Verizon Communications Inc., alleges, based upon personal knowledge and relevant documents, as follows:

## I. INTRODUCTION AND CERTAIN FACTUAL ALLEGATIONS

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements and claims made, used, or presented and/or caused to be made, used, or presented by Defendant Verizon Communications Inc. ("Defendant" or "Verizon") and/or its agents, employees, and co-conspirators in violation of the False Claims Act, 31 U.S.C. section 3729, *et seq.*, as amended ("the FCA").

2. This action has its root in the COVID-19 pandemic and resulting virtual/at-home learning for students across the country.

3. The Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act, is a $2.2 trillion economic stimulus bill passed by the 116th U.S. Congress and signed

into law by President Donald Trump on March 27, 2020, in response to the economic fallout of the COVID-19 pandemic in the United States.

4.      The CARES Act additionally directed the Federal Communications Commission to use the Fund to establish an Emergency Broadband Benefit Program ("EBB Program"), under which low-income households could receive a discount off the cost of broadband service and certain connected devices participating providers can receive reimbursement for such discounts.

5.      Defendant Verizon utilized the federal funds provided under the CARES Act and other stimulus funding provided by the United States of America to provide (at a purportedly discounted rate) school districts and low-income households with mobile hotspot devices for broadband connectivity for the advertised purpose of providing an avenue for all students to participate in distance learning during the global COVID-19 pandemic.

6.      On May 4, 2020, the State of Oklahoma was awarded $160,950,476.00 in federal K-12 relief funding from the Elementary and Secondary School Emergency Relief (ESSER) Fund created by the CARES Act. Within that funding, the Oklahoma State Department of Education (OSDE) was allocated a set-aside amount of $15,290,296.00 for "emergency needs" to address issues related to coronavirus. Of the set-aside funds, the OSDE purchased 50,000 Verizon Ellipsis Jetpack 900L hotspots to award to districts through a competitive grant. The OSDE intended for these hotspots to be used to provide connectivity to students who did not have an internet connection at home to access online learning content for purposes of distance learning. In addition, the OSDE intended for these hotspots to be used to serve low-income students to help bridge the digital divide.

7.      In the summer of 2020, the OSDE utilized federal funds established under the Emergency Broadband Connectivity Fund ("the Fund"), which was authorized by the

Consolidated Appropriations Act ("the Appropriations Act"), to purchase 50,000 hotspot devices that were awarded specifically under the CARES Hotspot Grant to districts across the State of Oklahoma as did other state departments of education across the country.

8. The devices provided by Verizon primarily included, but may not have been limited to, the Ellipsis Jetpack MHS900L and MHS900LS mobile hotspot devices.

9. The specific devices provided by Verizon were defective and known by Defendant to be defective (or should have been known by Defendant to be defective) as there were reports of multiple failures dating back to at least 2018, and which were eventually ordered to be recalled in the entirety by the U.S. Consumer Product Safety Commission. Moreover, many of the hotspots nationwide were rendered useless because connectivity could never be accomplished or even signed onto through its Mobile Device Management suite, which was the mechanism by which all such connectivity was initiated by Defendant.

10. The broadband connectivity services provided for by Verizon were billed to the United States and/or customers, including, but not limited to, state governments and school districts across the entire country, even though the devices failed, if they ever properly worked at all. Further, Defendant billed for connectivity that could never be accomplished or even signed onto through its Mobile Device Management suite, which was the mechanism by which all such connectivity was initiated by Defendant.

11. The action alleges that Verizon knowingly submits and/or has knowingly submitted claims to the United States (as well as, upon information and belief, numerous state departments of education and individual school districts) for not only initial CARES Act funding for the hotspots but also for payment of illegal surcharges, equipment charges, activation charges,

maintenance charges, and other charges under contracts and/or federal and/or state grants to provide mobile hotspots to school districts and students throughout the United States.

12. This action seeks reimbursement of all monies paid by the United States for such initial CARES funding and resulting illegal charges, as well as, where applicable and allowed, reimbursement of all monies paid by the affected school district(s) for such illegal charges.

13. Based on Relator's knowledge of and experience with both broadband devices and connectivity as well as uniform billing practices implemented by telecommunications carriers, Relator alleges, on information and belief, that Verizon knowingly overcharged the United States by submitting fraudulent invoices for services that were supposed to have been rendered under the CARES Act and other stimulus funding provided in response to COVID-19, but never rendered.

14. The FCA was originally enacted in 1863 and was substantially amended in 1986 by the False Claims Amendments Act, Pub. L. 99-562, 100 Stat. 3153. Congress enacted the 1986 amendments to enhance and modernize the Government's tools for recovering losses sustained by frauds against it after finding that federal program fraud was pervasive. The amendments were intended to create incentives for individuals with knowledge of Government frauds to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit resources to prosecuting fraud on the Government's behalf.

15. The FCA provides that any person who presents, or causes to be presented, false or fraudulent claims for payment or approval to the United States Government, or knowingly makes, uses, or causes to be made or used false records and statements to induce the Government to pay or approve false and fraudulent claims, is liable for a civil penalty ranging from $5,500.00 up to $11,000.00 for each such claim, plus three times the amount of the damages sustained by the federal Government.

16. The Act allows any person having information about false or fraudulent claims to bring an action for himself and the Government, and to share in any recovery. The Act requires the complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time). Based on these provisions, *qui tam* plaintiff Scott Foster seeks through this action to recover all available damages, civil penalties, and other relief.

17. While the precise amount of the loss to the federal and state government cannot presently be determined, it is estimated that the damages and civil penalties that may be assessed against the defendant under the facts alleged in this Complaint amounts to millions of dollars at the very least. Plaintiff/Relator respectfully reserves the right to amend this Complaint upon the revelation of further investigatory information.

## II. PARTIES

18. Relator Scott Foster is the Technology Director for Ardmore City Schools in Ardmore, Oklahoma. Mr. Foster is responsible for negotiating contracts for services such as broadband for the school district as well as for technical guidance and support to the district for such services and associated and related devices.

19. Relator Scott Foster ("Relator," Relator Foster," or "Foster") discovered the false and fraudulent claims that are at issue in this case through his extensive work as the Technology Director for Ardmore City Schools including reviewing invoices and/or billing statements for services rendered for broadband service and devices purchased for such purpose. During the course of his work, Foster became aware of an issue regarding the broadband devices provided by Verizon and aware that the actual broadband service billed for was never provided or available to be utilized as the devices were defective and, in some instances, never connected for service.

20. Upon further investigation, Relator Foster discovered Verizon was billing for not only defective devices that had no service, but also for devices never enrolled in their program.

21. Verizon is a Delaware corporation, and it is further believed Verizon knew or should have known the devices they were providing through the Program were defective and anticipated replacing the said defective devices through reimbursements provided through CARES Act or other COVID-19 stimulus funding.

### III.   JURISDICTION AND VENUE

22. Jurisdiction is based on 28 U.S.C. section 1331 and 31 U.S.C. section 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. sections 3729 and 3730. Under 31 U.S.C. section 3730(e), there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint.

23. Venue is proper in the Northern District of Oklahoma pursuant to 31 U.S.C. section 3732(a) because the Defendant can be found in and transacts or has transacted business in this district.

### IV.   FURTHER FACTUAL ALLEGATIONS

24. In mid-2020, and in conjunction with pandemic stimulus programs, including the federal CARES Act, Verizon provided broadband devices that were supposed to provide broadband communication capabilities, by and through mobile hotspots, to school districts and low-income families to assist in distance learning necessitated by the global pandemic of COVID-19.

25. Specifically, Verizon provided Ellipsis Jetpack MHS900L and MHS900LS hotspot devices, which were known to have significant overheating issues causing heat-related damage. On information and belief, the defect in the device was reported at least as early as 2018 and,

eventually, in 2021, 100% of the devices were ordered to be recalled by the U.S. Consumer Product Safety Commission.

26. Upon investigation, Relator Foster discovered that of the 500 devices provided to the Ardmore City School District only 360 devices were distributed throughout the District with 50-70 of those devices unable to be enrolled in the Defendant's Mobile Device Management Suite ("MDM") and another 80-100 devices never taken out of their shipping boxes, which is in addition to still others that were defective.

27. Yet Defendant billed the District at the rate of $10.00 per month, plus FCC/USAC fees, for each of the 500 devices purchased by the District, payment for which was provided to the District through the federally funded CARES Hotspot Grant, even though they knew all devices were not brought into use or were not able to accomplish connectivity and presented extreme hazard and safety concerns due to overheating. This further caused individual school districts around the country, which made up the millions of hotspot recipients, to incur substantial financial damages aimed at attempting to manage, troubleshoot, or remedy the defective devices, in addition to subjecting them to potential tort liability should one or more devices overheat and cause a fire.

28. On information and belief, Relator alleges that Defendant has submitted similar fraudulent billing statements to school districts and low-income families across the State of Oklahoma and the Nation. In fact, it is believed that numerous states, including Massachusetts, Texas, Georgia, and others similar agreements with Defendant for the provision of the same or similar devices and services that covers millions of students in total. This is substantially certain to result in millions, if not billions, of dollars in profits to Verizon.

## COUNT I:
## VIOLATIONS OF FALSE CLAIMS ACT 31 U.S.C. Sections 3729(a)(1) and (a)(2)

29. Plaintiff realleges and incorporates by reference the allegations contained in preceding paragraphs of this Complaint.

30. This is a claim for treble damages and penalties under The False Claims Act, 31 U.S.C. section 3729, *et seq.*, as amended.

31. By virtue of the acts described above, Verizon knowingly presented or caused to be presented, false or fraudulent claims to the United States for payment or approval through submission of the false or fraudulent claims to Ardmore City School District, other school districts across the State of Oklahoma and other states, and to low-income families within the State of Oklahoma and other states across the country.

32. By virtue of the acts described above, Verizon knowingly made, used, or caused to be made or used false or fraudulent records and statements, and omitted material facts, to induce the United States to approve and pay such false or fraudulent claims. This was all done to increase Verizon's ultimate profitability and amounts to taking unfair advantage of the global pandemic, the needs created thereby, the CARES Act, and other government programs.

33. Based on information and belief, each claim for payment described in this Complaint was presented to the United States, state governments, school districts and low-income households within the State of Oklahoma and across the country who were recipients of federal funds, through reimbursement or grant programs, provided by the federal government through the CARES Act and/or other federal stimulus programs funded in response to the global pandemic resulting from COVID-19.

34. Based on information and belief, Verizon was reimbursed, through CARES Act and/or other federally funds provided as stimulus necessitated by COVID-19, for the provision of

original devices and/or repair and/or replacement of defective devices sold to school districts and low-income households knowing, or having cause to have known, the devices utilized under the federal programs were defective.

35. Plaintiff cannot at this time identify all the false or fraudulent claims for payment that have been caused by Defendant's conduct. Defendant and the United States, through school districts and low-income households within the State of Oklahoma and across the country, have within their possession the records that demonstrate the false or fraudulent claims and the amount of money improperly paid to Verizon.

36. The United States, unaware of the false or fraudulent records, statements, and claims made or caused to be made by Defendant, paid and/or reimbursed and continues to pay and/or reimburse the claims that would not be paid but for Defendant's false, fraudulent, and illegal practices.

37. The United States reimbursed Defendant for the defective devices Defendant knew, or should have known, were defective prior to Defendant providing the defective devices to school districts and low-income households within the State of Oklahoma and across the country.

38. Verizon's primary goal in providing hotspots to schoolchildren was furthering its own profits and financial gain.

39. By reason of Defendant's acts, the United States has been damaged, and continues to be damaged, in substantial amounts to be determined at trial.

## PRAYER

**WHEREFORE**, Relator prays for judgment against Defendant as follows:

1. That Defendant cease and desist from violating 31 U.S.C. section 3729, *et seq.*;

2. That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil

9

penalty of not less than $5,000.00 and not more than $11,000.00 for each violation of 31 U.S.C. section 3729;

3. That Relator be awarded the maximum amount allowed pursuant to section 3730(d) of The False Claims Act;

4. That Relator be awarded all costs of this action, including attorneys' fees and expenses and interest;

5. That Relator be allowed leave to amend as investigation and/or discovery reveals further specific information; and

6. That Relator recover such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

Respectfully submitted,

SMITH BARKETT LAW GROUP, PLLC
David R. "Rusty" Smith, OBA #19575
Michael L. Barkett, OBA #16171
Dan Medlock, OBA #20092
James E. Walters, OBA #19964
P.O. Box 767
Muskogee, OK 74402-0767
Telephone: (918) 912-2000
Fax: (918) 912-2122
Email: rsmith@smithbarkett.com
          dmedlock@smithbarkett.com
          mbarkett@barkettlaw.net
*Attorneys for Plaintiff/Relator Scott Foster*

ATTORNEY LIEN CLAIMED