## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**UNITED STATES OF AMERICA,** *ex rel.*
**SCOTT FOSTER,**

        Plaintiff,

v.

**VERIZON COMMUNICATIONS INC.,**

        Defendant.

**Case No. 21-CV-166-TCK-MTS**

## VERIZON COMMUNICATIONS INC.'S MOTION TO DISMISS

John D. Russell, OBA No. 13343
GABLEGOTWALS
110 North Elgin Avenue, Suite 200
Tulsa, Oklahoma 74120-1495
Telephone: (918) 595-4800
*jrussell@gablelaw.com*

-and-

Michael Francisco, *pro hac vice*
Charles Wm. McIntyre, *pro hac vice*
Edwin O. Childs, Jr., *pro hac vice*
Michael A. Brody, *pro hac vice*
MCGUIREWOODS, LLP
888 16th Street N.W., Suite 500
Washington, DC 20006
Telephone: (202) 857-1700
*mfrancisco@mcguirewoods.com*
*cmcintyre@mcguirewoods.com*
*echilds@mcguirewoods.com*
*mbrody@mcguirewoods.com*

COUNSEL FOR DEFENDANT
VERIZON COMMUNICATIONS, INC.

DATED: June 20, 2023

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................... 1

RELATOR'S ALLEGATIONS AND PROCEDURAL HISTORY ........................... 3

STANDARD OF REVIEW ..................................................................................... 6

ARGUMENT .......................................................................................................... 7

I.     RELATOR FAILS TO PLEAD A VIOLATION OF THE FALSE CLAIMS ACT ......... 7

     A.     Relator Fails to Plead A False Statement or Fraudulent Course of Conduct ......... 8

          1.     Relator Does Not Plead Facts to Support A Factual Falsity Theory ......... 8

          2.     Relator Does Not Plead Facts to Support a Legal Falsity Theory ........... 11

     B.     The Complaint Lacks Sufficient Allegations of Scienter .................................... 12

     C.     The Complaint Fails to Plead Materiality ............................................................ 14

     D.     The Complaint Fails to Plead Fraud With Particularity ...................................... 16

II.     RELATOR IS NOT AN ORIGINAL SOURCE ................................................. 19

III.     RELATOR FAILED TO PERFECT SERVICE OF PROCESS .................................... 22

     A.     Relator Failed to Follow State Law Requirements That Service Must First Be Attempted at a Corporation's Last-Known Address ..................................... 22

     B.     Relator Failed to Timely Serve the Complaint .................................................... 23

IV.     THE COMPLAINT MUST BE DISMISSED AGAINST VERIZON COMMUNICATIONS INC ................................................................................. 24

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*U.S. ex rel. Ambrosecchia v. Paddock Labs., LLC*,
  855 F.3d 949 (8th Cir. 2017) .................................................14

*U.S. ex rel. Anderson v. Northern Telecom, Inc.*,
  141 F.3d 1179 (9th Cir. 1998) ...............................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................7

*Bailey's Welding & Mach., LLC v. DEL Corp.*,
  2020 WL 1811662 (W.D. Okla. Apr. 9, 2020) ........................22

*U.S. ex rel. Barrick v. Parker-Migliorini Int'l, Inc.*,
  2015 WL 9412537 (D. Utah Dec. 22, 2015)............................19

*Birmingham v. Experian Information Solutions, Inc.*,
  633 F.3d 1006 (10th Cir. 2011) .............................................24

*Bishop v. Wells Fargo & Co.*,
  823 F.2d 35 (2d Cir. 2016), vacated on other grounds, 137 S. Ct. 1067 (2017)......................9

*U.S. ex rel. Boggs v. Bright Smile Family Dentistry, P.L.C.*,
  2013 WL 1688898 (W.D. Okla. 2013) ....................................13

*U.S. ex rel. Brooks v. Stevens-Henager Coll.*,
  305 F. Supp. 3d 1279 (D. Utah 2018)....................................19

*U.S. ex rel. Burlbaw v. Orenduff*,
  548 F.3d 931 (10th Cir. 2008) ...............................................12

*U.S. ex rel. Clark v. UnitedHealth Grp., Inc.*,
  2016 WL 9777207 (D.N.M. Sept. 22, 2016) ...........................17

*U.S. ex rel. Clarke v. Healthsouth Corp.*,
  2019 WL 11502531 (M.D. Fla. May 24, 2019)........................23

*U.S. ex rel. Complin v. N. Carolina Baptist Hosp.*,
  818 F. App'x 179 (4th Cir. 2020) ..........................................13

*D'Agostino v. ev3, Inc.*,
  845 F.3d 1 (1st Cir. 2016) .....................................................16

-ii-

*U.S. ex rel. Dunn v. Procarent, Inc.*,
  615 F. Supp. 3d 593 (W.D. Ky. 2022) ...................................................................14

*U.S. ex rel. Ernst v. HCA Healthcare, Inc.*,
  2020 WL 6868775 (D. Kan. Nov. 23, 2020) (unpublished) ...................................18

*Fed. Deposit Ins. Corp. v. Oaklawn Apartments*,
  959 F.2d 170 (10th Cir. 1992) ...............................................................................22

*Fernandez v. Clean House, LLC*,
  883 F.3d 1296 (10th Cir. 2018) .............................................................................20

*U.S. ex rel. Fowler v. Caremark RX, L.L.C.*,
  496 F.3d 730 (7th Cir. 2007) .................................................................................14

*U.S. ex rel. Grupp v. DHL Worldwide Exp., Inc.*,
  604 Fed. App'x 40 (2d Cir. 2015) ..........................................................................11

*HollyFrontier Cheyenne Ref'g, LLC v. Renewable Fuels Ass'n*,
  141 S. Ct. 2172 (2021) .............................................................................................1

*U.S. ex rel. Janssen v. Lawrence Mem'l Hosp.*,
  949 F.3d 533 (10th Cir. 2020) ...................................................................7, 15, 16

*Jenkins v. City of Topeka*,
  136 F.3d 1274 (10th Cir. 1998) ...............................................................................7

*Kinney v. Stoltz*,
  327 F.3d 671 (8th Cir. 2003) ...................................................................................8

*U.S. ex rel. Kraxberger v. Kansas City Power & Light Co.*,
  756 F.3d 1075 (8th Cir. 2014) ...............................................................................20

*U.S. ex rel. Lemmon v. Envirocare of Utah*,
  614 F.3d 1163 (10th Cir. 2010) .............................................................................17

*Colorado and U.S. ex. rel. Lovato v. Kindred Healthcare, Inc.*,
  2021 WL 1085423 (D. Colo. Mar. 22, 2021) ........................................................17

*U.S. ex rel. Mailly v. Healthsouth Holdings, Inc.*,
  2010 WL 149830 (D.N.J. Jan. 15, 2010) ...............................................................23

*U.S. ex rel. Polukoff v. St. Mark's Hosp.*,
  895 F.3d 730 (10th Cir. 2018) ...........................................................................8, 11

*Prime v. Post, Buckley, Schuh & Jernigan, Inc.*,
  2013 WL 4306357 (M.D. Fla. 2013) ......................................................................11

*U. S. ex rel. Provuncher v. Angioscore, Inc.*,
    2012 WL 3144885 (D. Mass. Aug. 3, 2012) ........................................................3

*U.S. ex rel. Reed v. Keypoint Government Solutions*,
    923 F.3d 729 (10th Cir. 2019) ......................................................................19

*U. S. ex rel. Schutte v. SuperValu Inc.*,
    No. 21-111, 143 S. Ct. 1391 (U.S. June 1, 2023) .............................................3, 14

*Schwartz v. Celestial Seasonings, Inc.*,
    124 F.3d 1246 (10th Cir. 1997) ....................................................................19

*U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
    472 F.3d 702 (10th Cir. 2006) (abrogated on other grounds)..........................7, 8, 19

*U.S. ex rel. Simpson v. Leprino Foods Dairy Prods. Co.*,
    2018 WL 1375792 (D. Colo. Mar. 19, 2018) ...................................................13

*U.S. ex rel. Steuert v. L3 Harris Techs.*,
    2022 WL 970187 (D.N.J. Mar. 31, 2022), *appeal dismissed sub nom. Steuert*
    *v. L-3 Commc'ns Corp.*, 2023 WL 421006 (3d Cir. Jan. 26, 2023) ......................12

*Sturgeon v. Phamerica Corp.*,
    438 F. Supp. 3d 246 (E.D. Pa. 2020) .............................................................21

*In re: Syngenta AG Mir 162 Corn Litig.*,
    2016 WL 5851795 (D. Kan. Oct. 6, 2016) ......................................................20

*Universal Health Servs. Inc. v. U.S. ex rel. Escobar*,
    579 U.S. (2016)........................................................................... *passim*

*U.S. ex rel. Wagner v. Care Plus Home Health Care, Inc.*,
    2017 WL 6329850 (N.D. Okla. Dec. 11, 2017)................................................17

*U.S. ex rel. Westrick v. Second Chance Body Armor*,
    128 F. Supp. 3d 1 (D.D.C. 2015) ..................................................................10

*Whitsell v. United States*,
    198 F.3d 260 (10th Cir. 1999) .......................................................................7

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 ..........................................................................................11

## Statutes

12 Okla. Stat. § 2004(C)(4)...........................................................................22, 23

31 U.S.C. § 3729(a)(1)..................................................................................12

31 U.S.C. § 3730(e)(4)(B) ................................................................................20

CARES Act ...................................................................................................3, 17

False Claims Act ....................................................................................... *passim*

False Claims Act, 31 U.S.C. § 3729 ..............................................................6, 7

federal CARES Act ............................................................................................1

**Other Authorities**

Available at https://oklahoma.gov/omes/services/information-services/it-
contracts/contracts/sw1012v.html (last visited June19, 2023) .................1

Available at
https://sde.ok.gov/sites/default/files/CARES%20Act%20Hotspot%20Grants.p
df (last visited June 19, 2023) ...................................................................1

Ex. B, available at <https://www.saferproducts.gov/PublicSearch
/Detail?ReportId=17662 .........................................................................21

Fed. R. Civ. P. 4(e)(1) ......................................................................................22

Fed. R. Civ. P. 4(m) .........................................................................................23

Fed. R. Civ. P. 12(b)(6) .....................................................................................6

Federal Rules. Rule 4(m) .................................................................................23

, https://about.att.com/story/2020/distance_learning_family_connections.html ............................1

https://www.verizon.com/business/resources/flyer/2021/manage-the-mobile-
devices-across-your-organization.pdf.........................................................6

Relator *about Veriz* ........................................................................................17

Rule 9(b) ................................................................................................ *passim*

Rule 12(b)(5) ...................................................................................................7, 22

Rules 12(b)(5), 12(b)(6), and 9(b) ....................................................................3

What Is Mobile Device Management, available at
https://www.vmware.com/topics/glossary/content/mobile-device-
management.html......................................................................................6

## INTRODUCTION

At the height of the COVID-19 pandemic, many schools closed and had to adopt remote learning practices on the fly. The federal government and various state governments enacted programs to keep schools operating. Here, the State of Oklahoma ("Oklahoma" or "the State") contracted with Verizon[1] to facilitate distance learning by supplying devices that provided internet access.[2] *See* Oklahoma State Department of Education Cares Hotspot Grants, Exh. A.[3] Oklahoma's distance learning program aimed to provide K-12 students with the opportunity to participate in remote learning during the pandemic through internet connectivity. *Id.* As part of the distance learning process, the Oklahoma State Department of Education ("OKSDOE") used federal money granted to Oklahoma under the federal CARES Act to purchase 50,000 Ellipsis Jetpack 900L mobile cellular broadband devices (the "Devices") and based the terms of the purchase on a pre-existing statewide contract with Verizon.[4] The contract between the OKSDOE and Verizon required Verizon to deliver the Devices directly to the school districts within the State. *Id.* at 3.

The Complaint must be dismissed for failure to plead any element of a false claim: there is no false claim, no alleged material falsity, no false claim that Verizon had knowledge of, and no alleged material harm to the OKSDOE or any school district from Verizon's conduct. Each of

---

[1] Relator named "Verizon Communications Inc." as the Defendant in this lawsuit. As explained below, Verizon Communications Inc. is not the correct party. For ease of reference, however, Defendant will simply refer to itself as "Verizon" for purposes of this Motion.

[2] Verizon was one of many wireless telecommunications providers to provide distance learning equipment and services on a contract basis during the COVID-19 pandemic. *See e.g.*, https://about.att.com/story/2020/distance_learning_family_connections.html Not relevant here, Verizon provided wireless devices for distance learning in other States during the pandemic.

[3] Available at https://sde.ok.gov/sites/default/files/CARES%20Act%20Hotspot%20Grants.pdf (last visited June 19, 2023). The Court may take judicial notice of this document, which is available on the State of Oklahoma's website and appears to be copied verbatim in parts of the Complaint. *See HollyFrontier Cheyenne Ref'g, LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172 (2021).

[4] Available at https://oklahoma.gov/omes/services/information-services/it-contracts/contracts/sw1012v.html (last visited June19, 2023).

these flaws is an independent ground for dismissal. Relator also lacks the personal knowledge necessary to qualify as an "original source." Furthermore, the Complaint is procedurally defective because it was served on the wrong party, too late, and on the wrong representative.

On its own terms, this is a purported False Claims Act case about just a handful of the 50,000 Devices. Relator Scott Foster, an administrator at one of Oklahoma's more-than 500 school districts, only has personal knowledge about a mere one percent (1%) of the Devices, at most, namely the 500 Devices received by the Ardmore School District ("District"). Even as to this small fraction, however, Relator fails to identify a single defect in any devices or any false claim. This alone is fatal.

Relator instead alleges, generally and vaguely, that similar products elsewhere *might* have had issues with overheating, which is apropos of nothing other than perhaps a warranty issue. Any false claim to the government must start with a *false* claim. Pointing to alleged problems with a small number of similar products used elsewhere does not suffice. Alleged flaws in the Devices outside the School District would be like a relator claiming that the sale of a few hundred Ford F-150 pickups to Oklahoma, using a federal grant, represents a fraudulent claim because a handful of Fords sold to someone else in Vermont had a defective starter. Similarly, Relator here completely fails to allege a false claim related to Verizon's provision of the 500 Devices.

Perhaps recognizing the weakness of any direct false claim theory, Relator makes passing reference to Verizon's billing for cellular broadband service for the Devices. This fallback theory also falls well short. Critically, nowhere in the Complaint does Relator allege that Verizon failed to provide the School District with the wireless services that it invoiced for, or violated some legal or contractual provision for providing wireless services. Instead, the Complaint admits that the School District received exactly the Devices and the wireless broadband services it expected.

2

At most, Relator complains that just a handful of the Devices that Verizon provided to the School District might have had some vague technical difficulty functioning in all possible conditions. Far from a false claim, Relator describes only commonplace challenges with consumer electronic products. Sometimes a small number of products need troubleshooting or suffer some technical anomaly that can be addressed in the normal course, either by replacement or repair. Such circumstances do not support a *qui tam* claim for defrauding the government. Information Technology challenges cannot be converted into *qui tam* claims for committing fraud.

Relator's theory of "any-miniscule-technical-defect-is-fraud" would be an unprecedented expansion of the FCA's standards, which "[o]n their face and at common law […] focus primarily on what [the defendant] thought and believed." *U. S. ex rel. Schutte v. SuperValu Inc.*, No. 21-111, 143 S. Ct. 1391 (U.S. June 1, 2023). As another federal district court explained, sophisticated devices "almost inevitably will be subject to a statistically predictable failure rate," and that such failure "is not the evil that Congress sought to root out by passage of the False Claims Act." *U. S. ex rel. Provuncher v. Angioscore, Inc*., 2012 WL 3144885, at *2 (D. Mass. Aug. 3, 2012). Consequently, the Complaint fails under Rules 12(b)(5), 12(b)(6), and 9(b).

### RELATOR'S ALLEGATIONS AND PROCEDURAL HISTORY

*Allegations.* On May 4, 2020, the OKSDOE was awarded federal funding from the Elementary and Secondary School Emergency Relief Fund created by the CARES Act. *See* Ex. A*; see also* Compl. ¶ 6. The OKSDOE set aside $15,290,296.00 of these funds for "emergency needs" related to COVID-19. *Id*. With these funds, the OKSDOE sought to purchase broadband devices so that students who had no internet connectivity in their home could still participate in distance learning. *Id.* With these funds, Relator alleges that the OKSDOE purchased the Devices from

Verizon, which would be awarded to individual school districts through a competitive grant process. *Id.*; *see also* Compl. ¶¶ 6-7.

Although Relator never fully explains the process by which the Devices were distributed to the school districts within Oklahoma, he alleges that "[d]uring the course of his work, [he] became aware of an issue regarding the broadband devices provided by Verizon." Compl. ¶ 19. To that end, and *without any detail*, Relator alleges that he became "aware that the actual broadband service [Verizon] billed for was never provided or available to be utilized as the devices were defective and, in some instances, never connected for service." Compl. ¶ 19. Relator alleges that "[u]pon investigation" he "discovered that of the 500 Devices provided to the Ardmore City School District[,] only 360 Devices were distributed throughout the District with 50-70 of those Devices unable to be enrolled in [Verizon's] Mobile Device Management Suite ('MDM') and another 80-100 Devices never taken out of their shipping boxes, which is in addition to still others that were defective." Compl. ¶ 26.

Relator generally alleges that he "is responsible for negotiating contracts for services such as broadband for the school district, as well as for technical guidance and support to the district for such services and associated and related devices." Compl. ¶ 18.

Yet, despite his claimed "extensive work," Relator's specifics regarding either Verizon's activities or the Devices themselves are remarkably scant. Relator alleges only generally that the Devices "were known to have significant overheating issues causing heat-related damage." Compl. ¶ 25. Relator never says how many—if any—of the 500 Devices provided to the School District actually had an overheating issue. Relator only notes that these issues were known generally in the marketplace as early as 2018, without any particularity. Compl. ¶ 25. Relator also notes that the

Devices were recalled by the Consumer Product Safety Commission in 2021 (Compl. ¶ 25), well after the contracts at issue were executed and the devices were supplied.

Then, without any explanation as to whether he even saw a single bill Verizon submitted, or any of the relevant detail of the bills, Relator simply states that "[u]pon further investigation, [he] discovered Verizon was billing for not only defective devices that had no service, but also for devices never enrolled in their program." Compl. ¶ 20. Relator never once explains what this alleged "investigation" entailed—or if he was even the one to undertake it.

Relator then alleges that Verizon billed the District at the rate of $10 per month for each of the 500 Devices the District purchased plus FCC/USAC fees. Compl. ¶ 27.[5] Relator suggests it was improper for Verizon to bill the District, because Verizon "knew all devices were not brought into use or were not able to accomplish connectivity and presented extreme hazard and safety concerns due to overheating." Compl. ¶ 27. Relator suggests that these bills amounted to an "overcharge," because they represent—as he puts it—services "never rendered." Compl. ¶ 13. Relator cites no particular contract provision to support his allegations. Relator does not allege that any of these 500 Devices caused any harm to anyone in the School District or anywhere in Oklahoma.[6] Relator never identifies any specific number of Devices that could not connect to the internet (let alone why those devices did not connect to the internet). In fact, even if every allegation in the complaint is taken as true, it is possible that every single one of the 500 Devices

---

[5] The OKSDOE actually purchased the Devices and then itself directed the distribution to the various school districts. *See* supra n.3.

[6] Although Relator does not provide sufficient detail to fully understand this allegation, he suggests that "millions of hotspot recipients […] incur[red] substantial financial damages aimed at attempting to manage, troubleshoot, or remedy the defective devices[.]" Compl. ¶ 27. Relator does not allege that either he or anyone else has knowledge of these purported damages suffered by millions across the nation, nor does he specify which devices he is referring to, whether Verizon provided them, or whether they have any relevance to the Oklahoma distance learning program.

provided to the School District was capable of connecting to the internet or did in fact connect to the internet. The only specific allegations about the 500 Devices involve School District activity unknown to Verizon, such as some number of Devices allegedly being left in boxes. Verizon had no control over how the School District used or unboxed the Devices. Likewise, Relator alleges that 50-70 Devices had trouble connecting to something called the MDM. Compl. ¶ 26. Relator never connects the MDM, however, to the central question: can the Devices connect students to the internet? The allegation is lacking particularity here for good reason. MDM is an optional administrative tool and mobile cellular broadband devices are capable of connecting students to the internet even if MDM does not function normally.[7]

*Procedural History.* Relator filed this *qui tam* Complaint in April 2021, asserting a single count under the False Claims Act, 31 U.S.C. § 3729. ECF No. 2. The Complaint remained under seal until December 21, 2022, at which time the government declined to intervene. ECF No. 14. A summons issued on March 21, 2023. ECF No. 16. The summons named Verizon Communications Inc., but was addressed to the Oklahoma Secretary of State's Office. *Id.* On April 6, 2023, the Court entered on the docket a summons returned executed by the Oklahoma Secretary of State. ECF No. 18. On April 21, 2023, the parties reached an agreement that Verizon could have additional time to respond to the Complaint. ECF No. 21. This Motion then followed.

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure require dismissal of a Complaint where the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a

---

[7]   See   https://www.verizon.com/business/resources/flyer/2021/manage-the-mobile-devices-across-your-organization.pdf (describing MDM); *see also* What Is Mobile Device Management, available at https://www.vmware.com/topics/glossary/content/mobile-device-management.html (explaining MDM is a tool used to "automate, control, and secure administrative policies on laptops, smartphones, tablets, or any other device connected to an organization's network.")

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Fraud claims, including FCA claims, must satisfy the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-727 (10th Cir. 2006) (abrogated on other grounds). (internal quotation marks omitted).

Additionally, "effectuation of service is a precondition to suit." *Jenkins v. City of Topeka,* 136 F.3d 1274, 1275 (10th Cir. 1998). Thus, Rule 12(b)(5) "allow[s] a defendant to defend against a claim on the grounds of insufficiency of process and insufficiency of service of process." *Whitsell v. United States,* 198 F.3d 260 (10th Cir. 1999).

## ARGUMENT

## I.   RELATOR FAILS TO PLEAD A VIOLATION OF THE FALSE CLAIMS ACT

Section 3729(a) of Title 31 prohibits making false or fraudulent claims for payment to the United States. It makes any person liable who "knowingly presents, or causes to be presented, a false or fraudulent claim for approval," §3729(a)(1)(A), or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," §3729(a)(1)(B). To allege a plausible FCA claim under § 3729, a plaintiff must plead facts capable of establishing the following elements: "(1) a false statement or fraudulent course of conduct; (2) made with the requisite scienter; (3) that is material; and (4) that results in a claim to the Government or conceals, decreases, or avoids an obligation to pay the Government." *U.S. ex rel. Janssen v. Lawrence Mem'l Hosp.,* 949 F.3d 533, 539 (10th Cir. 2020) (citation omitted).

The Complaint first fails to plausibly allege that Verizon submitted or caused to be submitted any *false* claim for payment to the government. The False Claims Act applies only to *misrepresentations* material to payment, which requires a false or fraudulent claim. *See Sikkenga*, 472 F.3d at 727 ("[P]resentation of a false or fraudulent claim to the government is a central element of every [FCA] case.").

### A.    Relator Fails to Plead A False Statement or Fraudulent Course of Conduct

Relator fails to allege that (1) Verizon did not provide the devices that it billed for, (2) that Verizon violated a federal law or regulation, or (3) that Verizon violated a term of its contract with Oklahoma. As a result, Relator fails to allege that Verizon's claims for reimbursement were "false." False or fraudulent claims include "both factually false and legally false requests for payment." *U.S. ex rel. Polukoff v. St. Mark's Hosp.,* 895 F.3d 730, 741 (10th Cir. 2018). "Factually false claims generally require a showing that the payee has submitted an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." *Id.* "Claims arising from legally false requests, on the other hand, generally require knowingly false certification of compliance with a regulation or contractual provision as a condition of payment." *Id.* The Complaint fails under both theories.[8]

### 1.    Relator Does Not Plead Facts to Support A Factual Falsity Theory

While hardly clear from the Complaint, Relator's theory of fraud, as best as can reasonably be determined, is apparently premised on factual falsity—i.e., what he perceives to be Verizon's failure to provide conforming goods. This type of claim arises, for example, when a government

---

[8] Even if Relator could allege a false statement or course of conduct in the Complaint, his knowledge is limited to the 500 Devices he alleges Verizon provided to the School District. *See Kinney v. Stoltz,* 327 F.3d 671, 674 (8th Cir. 2003) (explaining that a relator must have "personal knowledge of the facts relating to the alleged scheme or fraud against the government in order to bring a lawsuit.")

contractor claims they provided certain goods, but that those goods were not as promised. *See Bishop v. Wells Fargo & Co.,* 823 F.2d 35, 43 (2d Cir. 2016), vacated on other grounds, 137 S. Ct. 1067 (2017) ("Consistent with its origin, the archetypal FCA claim involves a factually false request for payment from the government, as when a contractor delivers a box of sawdust to the military but bills for a shipment of guns.").

Here, although Relator vaguely states that some unknown number of the Devices were defective, his own allegations fail to support that conclusion. With respect to the 500 Devices about which Relator claims knowledge, Relator alleges:

- that only 360 out of the 500 Devices were distributed in the School District,

  - that 50-70 of those 360 Devices could not be enrolled in Verizon's MDM;

- that another 80-100 Devices were never taken out of their shipping boxes; and

- that an unstated number of "others [] were defective." Compl. ¶ 26.

First, Relator's vague allegation that 80-100 of the Devices were never taken out of their shipping boxes does not in any way suggest the Devices were problematic or that Verizon did not deliver them. Relator does not cite any provisions of the contractual arrangement identifying what, if any commitments Verizon might have had to distribute the Devices throughout the State or if Verizon was only required to sell and deliver the Devices to individual school districts. Naturally, because Relator does not cite to the contract, Relator cannot identify any requirement that Verizon could only submit claims for reimbursement if the Devices *were actually used*. If anything, the Complaint suggests that it was the School District's own choice not to unpack the Devices. Plus, if, indeed, the Devices were never taken out of the box, Relator presumably cannot know if the Devices were functional or not. In fact, the State's public pronouncement regarding the purchase

9

of the Devices indicates that "Districts are responsible for payment of the monthly service fee regardless of whether the device is being used." See Ex. A.

Second, Relator alleges that 50-70 of the Devices were unable to be enrolled in Verizon's Mobile Device Management ("MDM") system. Relator identifies no additional details concerning efforts to enroll these specific Devices; leaving open the possibility that it was user error that precluded the enrollment and not that Verizon provided faulty Devices. Although Relator cursorily identifies the MDM suite as "the mechanism by which all such connectivity was initiated by Defendant[,]" Compl. ¶ 9, Relator does not affirmatively state that these 50-70 Devices were unable to *connect to the Internet*, which, as he acknowledges was the only purpose for which Oklahoma purchased the Devices. Compl. ¶ 6. *See* n. 4 (explaining that Devices can connect to the internet regardless of MDM software functionality).

Third, Relator also vaguely asserts "other[] [devices] that were defective," but fails to provide even a scintilla of notice to Verizon as to what Relator is trying to allege. Relator cannot simply state that the Devices were "defective" without even trying to explain how he is using that term. Verizon, and the Court, cannot be left to guess what the defect was, how many Devices were defective, or what legal or contractual obligation was violated.

Finally, Relator cannot allege factual falsity because he does not allege that Verizon billed for services it did not render. *See, e.g.*, *U.S. ex rel. Westrick v. Second Chance Body Armor*, 128 F. Supp. 3d 1, 10 (D.D.C. 2015) (rejecting government's argument that FCA claim premised on "sale of defective bullet proof vests" could be argued under theory of factual falsity, where "the government's claim here is not that it did not receive bullet proof vests, but that the bullet proof vests in this case did not comply with express and implied agreements."). As such, the Court should

dismiss Relator's claim to the extent it is premised on a theory of factual falsity, because Verizon did in fact deliver to the State through its school districts the Devices the OKSDOE purchased.

### 2.    Relator Does Not Plead Facts to Support a Legal Falsity Theory

If Relator is propounding a theory of legal falsity—and, again, the coherency of the Complaint makes it difficult to discern—then, it too must fail, because Relator failed to cite any contractual obligations between Verizon and the OKSDOE, much less to any violations of specific provisions. Although legal falsity may take two forms, both require a false certification. *See Polukoff,* 895 F.3d at 741. "An express false certification theory applies when a government payee falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment." *Id.* For implied false certification, two conditions must be satisfied: "first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Universal Health Servs. Inc. v. U.S. ex rel. Escobar*, 579 U.S. at 176, 190 (2016). Neither are met here.

Most importantly, conduct which complies with clear contractual specifications cannot, by definition, amount to a false representation. *See, e.g., U.S. ex rel. Grupp v. DHL Worldwide Exp., Inc.*, 604 Fed. App'x 40 (2d Cir. 2015); *U.S. ex rel. Anderson v. Northern Telecom, Inc.*, 141 F.3d 1179 (9th Cir. 1998); *Prime v. Post, Buckley, Schuh & Jernigan, Inc.*, 2013 WL 4306357 (M.D. Fla. 2013). Additionally, even if Relator did point to a specific contractual provision that he believes was violated, he cannot use a simple breach of contract allegation to assert an FCA violation. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370. 373 (4th Cir. 2008) ("If every dispute involving contractual performance were to be transformed into a *qui tam* FCA suit, the prospect of litigation in government contracting would literally have no end.").

### B.      The Complaint Lacks Sufficient Allegations of Scienter

Because Relator fails to allege that Verizon submitted a false claim; it is nearly impossible to discern any colorable allegations of Verizon's knowledge regarding the same. FCA liability applies only when a defendant "knowingly" violates the law, *see* 31 U.S.C. § 3729(a)(1), which means that the defendant "has 'actual knowledge of the information,' 'acts in deliberate ignorance of the truth or falsity of the information,' or 'acts in reckless disregard for the truth or falsity of the information.'" *Escobar*, 579 U.S. at 182 (quoting 31 U.S.C. § 3729(b)(1)(A)). "[T]he scienter and falsity elements of an FCA claim are two sides of the same coin[,]" and a Relator cannot demonstrate scienter without first alleging falsity. *U.S. ex rel. Steuert v. L3 Harris Techs.,* 2022 WL 970187, at *5 (D.N.J. Mar. 31, 2022), *appeal dismissed sub nom. Steuert v. L-3 Commc'ns Corp.*, 2023 WL 421006 (3d Cir. Jan. 26, 2023). Because Relator has failed to allege that Verizon engaged in a false or fraudulent course of conduct, the Court need not take the extra step in determining whether Verizon "knowingly" did so.

But, even if Relator had alleged that Verizon made a false claim, or engaged in a fraudulent course of conduct, the Complaint lacks any allegations from which the Court could infer that Verizon knowingly and intentionally made any such false representations or behaved fraudulently. As with materiality, the FCA's scienter element is "rigorous." *Escobar*, 579 U.S. at 192. Negligence is not enough, nor will conclusory allegations of intentional or reckless misconduct suffice. *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 949 (10th Cir. 2008).

Relator's purported factual allegations to support scienter mostly consist of conclusory statements that Verizon knew or should have known about "defective" Devices. *See* Compl. ¶ 9 (alleging that "[t]he specific devices provided by Verizon were defective and known by [Verizon] to be defective (or should have been known by [Verizon] to be defective) as there were reports of multiple failures dating back to at least 2018[.]"); Compl. ¶ 21 (stating "it is further believed

Verizon knew or should have known the devices they were providing through the Program were defective[.]"); Compl. ¶ 27 (alleging that Verizon "knew all devices were not brought into use or were not able to accomplish connectivity and presented extreme hazard and safety concerns due to overheating."); Compl. ¶ 37 (alleging generally that Verizon "knew or should have known" the Devices "were defective prior to [Verizon] providing the defective devices to school districts and low-income households within the State of Oklahoma and across the country."). These allegations are 'poster child' examples of conclusory allegations of scienter that fall well short of the rigorous requirement for a *qui tam* claim.

All of Relator's allegations that Verizon "should have known" of defects are plainly insufficient to establish the requisite scienter, because "[u]nder Tenth Circuit authority, simple negligence does not violate the False Claims Act." *U.S. ex rel. Boggs v. Bright Smile Family Dentistry, P.L.C.,* 2013 WL 1688898 at *3 (W.D. Okla. 2013) (citing *U.S. ex rel. Burlbaw v. Orenduff,* 548 F.3d 931, 949 (10th Cir. 2008)). Additionally, Relator's allegations that Verizon actually "knew" of the defects are also insufficient, because they are conclusory and thus fail to provide the "factual basis that gives rise to a strong inference of fraudulent intent." *U.S. ex rel. Simpson v. Leprino Foods Dairy Prods. Co.*, 2018 WL 1375792, at *2 (D. Colo. Mar. 19, 2018). Relator's generalized allegations that Verizon "knew" the devices were defective fail to meet this exacting standard. He does not allege how Verizon knew it, or who knew it, or what they knew, or why they would have known it. Courts have squarely rejected FCA claims premised on such conclusory allegations that a defendant "knew" of its allegedly wrongful activities without specific allegations of actual knowledge or at least enough facts establishing a supportable inference of such knowledge. *See, e.g., U.S. ex rel. Complin v. N. Carolina Baptist Hosp.*, 818 F. App'x 179, 183 (4th Cir. 2020) (rejecting "a general and conclusory allegation that the Hospitals 'knowingly'

submitted false claims" and explaining than an FCA plaintiff must do more, set[ting] forth specific facts that support an inference of scienter.") (internal citation and quotation omitted); *U.S. ex rel. Ambrosecchia v. Paddock Labs., LLC,* 855 F.3d 949, 955 (8th Cir. 2017) (rejecting the relator's claims, in the context of assessing whether she was an original source, where "the complaint provides no more than the simple, conclusory allegation that Defendants' actions were knowing.").

Even accepting that Relator's conclusory allegations are sufficient to plead that Verizon did know that certain of the Devices could be defective, it would still be insufficient, for "the False Claims Act is not a strict liability offense." *U.S. ex rel. Dunn v. Procarent, Inc.*, 615 F. Supp. 3d 593, 617 (W.D. Ky. 2022). Relator alleges nothing to suggest that Verizon provided the Devices with an unlawful intent. Relator's personal opinions do not plausibly plead that *Verizon* knew that the Devices it provided to the School District were anything other than industry-standard Devices. Relator's understanding of a false claim "would transform every inaccurate claim into a false claim and consequently replace the Act's knowledge requirement with a strict liability standard." *U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 743 (7th Cir. 2007). For all of these reasons, Relator fails to plead that Verizon acted with "actual knowledge," "deliberate ignorance," or "reckless disregard" for the fact that the Devices it provided might lead to the submission of a false claim.[9]

### C.    The Complaint Fails to Plead Materiality

The Complaint also fails to allege that any false statements made by Verizon were material to reimbursement. Materiality is a "rigorous" and "demanding" element of a claim under the False

---

[9] To the extent that Relator relies on the CPSC recall of the Devices as a basis for scienter as to Verizon, the Court must squarely reject such a proposition, because what matters for the scienter inquiry is "what the defendant thought when submitting the false claim—not what the defendant may have thought *after* submitting it." *Schutte*., 2023 WL 3742577 at *7 (emphasis in original). The CPSC recall occurred after the alleged events giving rise to the Complaint.

Claims Act. *Escobar*, 579 U.S. at 192, 194. As the Supreme Court has explained, any analysis of the False Claims Act's materiality element must "look[] to the effect of the likely or actual behavior of the recipient of the alleged misrepresentation." *Id.* at 2002. That the government may have "designate[d] compliance with a particular statutory, regulatory or contractual requirement as a condition of payment" is not enough to make a misrepresentation about compliance material, "[n]or is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.* Instead, "the sine qua non of materiality is some quotient of potential influence on the decision maker." *Janssen*, 949 F.3d at 540. Thus, "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Escobar*, 579 U.S. at 195.

Here, Relator offers no details at all concerning the alleged claims Verizon submitted and nothing about the amount of money paid by the State to Verizon for the 50,000 Devices, stating only in conclusory fashion that "Defendant billed the District at the rate of $10.00 per month." Compl. ¶ 27. Because the Relator has not identified the nature of the agreement between Verizon and the School District, this allegation reveals virtually nothing. Relator does not even allege how much the Devices cost. Furthermore, no facts elsewhere in the Complaint suggest that the alleged "defects," as described in the Complaint, were material to the government's payment of claims for services Verizon rendered to the School District. Perhaps implied in Relator's Complaint (and even that would be generous) is an allegation that the government would *not* pay for Verizon's services if the government were to know that Verizon had provided allegedly defective products. Even if Relator had made that allegation *explicitly*—and, to be clear, he did not—it would still be insufficient to show materiality, because "[a] misrepresentation cannot be deemed material merely

because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Escobar*, 579 U.S. at 194. Absent any allegation of non-compliance with any statutes or regulations, there is nothing to infer from the Complaint that Verizon made any misrepresentation at all, much less a material one.

Tellingly for materiality, the government has not sought to recoup payment from Verizon, despite being on notice of the Complaint at least since April 2021, more than two years ago, and the State having been aware, as the contracting entity, of the details of the arrangement for purchase of the Devices. As Relator argues, "defects" in these products were purportedly generally known dating as far back as 2018. Presumably these "reports" were also available to the government—or at least the Complaint does not indicate otherwise. The lack of any government effort to address the purported fraud that Relator alleges affected "millions of hotspot recipients" actually disproves the point. *See, e.g.*, *Janssen*, 949 F.3d at 542 (stating that the government's "inaction in the face of detailed allegations" of fraud "suggest[ed] immateriality"); *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 7 (1st Cir. 2016) ("The fact that CMS has not denied reimbursement ... in the wake of [FCA] allegations casts serious doubt on the materiality of the fraudulent representations.").

In sum, Relator has not come close to offering well-pleaded factual allegations that would satisfy the FCA's "rigorous" and "demanding" materiality element, and his FCA claim should be dismissed on that basis. *See Escobar*, 579 U.S. at 195 n.6 ("We reject [the] assertion that materiality is too fact intensive for courts to dismiss [FCA] cases on a motion to dismiss ....").

### D.    The Complaint Fails to Plead Fraud With Particularity

Even if Relator had pleaded a plausible violation of the False Claims Act, the Complaint would still fail because it lacks the particularity demanded by Rule 9(b). An FCA relator must plead with particularity "the specifics of a fraudulent scheme and provide an adequate basis for a

reasonable inference that false claims were submitted as part of that scheme." *U.S. ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1172 (10th Cir. 2010). *See also* Fed. R. Civ. P. 9(b).

Courts within this Circuit have recognized that "the allegations of the actual submission of a specific request for payment to the government is necessary in most FCA cases[.]" *U.S. ex rel. Wagner v. Care Plus Home Health Care, Inc.,* 2017 WL 6329850, at *4 (N.D. Okla. Dec. 11, 2017). To that end, courts have found a "fraudulent scheme" to be lacking when the relator's allegations fail to provide specific details concerning billing statements. *See, e.g., U.S. ex rel. Clark v. UnitedHealth Grp., Inc.,* 2016 WL 9777207, at *6 (D.N.M. Sept. 22, 2016) ("Without alleging any dates of specific false claims made by any Defendants, Relator fails to plead with particularity that Defendants submitted false claims with knowledge or reckless disregard for their falsity (or, in other words, that Defendants submitted claims after discovering fraud on the part of their subcontractors)."); *see also Colorado and U.S. ex. rel. Lovato v. Kindred Healthcare, Inc*., 2021 WL 1085423, at *10 (D. Colo. Mar. 22, 2021) ("In this case, Ms. Lovato alleges three dates on which Ms. Yaeger allegedly made admissions decisions, but she only conclusorily alleges that Defendants Yaeger and Kindred submitted false claims[.]").

Here, the Complaint's allegations concerning Verizon do not come close to complying with the exacting requirements of Rule 9(b). As to Verizon's actions in the School District, the *only* allegations made by Relator *about Verizon* are that it provided the School District with 500 Devices (Compl. ¶¶ 25-26), that Verizon "knew all devices were not brought into use or were not able to accomplish connectivity and presented extreme hazard and safety concerns due to overheating" (Compl. ¶ 27), that Verizon billed the School District at $10 per month for each of the 500 devices (Compl. ¶ 27), and that the School District reimbursed Verizon for that billing with federal funds from the CARES Act and other COVID-19-related emergency funding (Compl. ¶ 34).

Nowhere, in these allegations, however, does Relator provide any details of the following: the number of Devices for which Verizon sought reimbursement, the number of those Devices that were allegedly "defective[,]" the agreement between Verizon and the State; the agreement between Verizon and the School District (if any), when Verizon provided the Devices to the School District; what Verizon represented to the School District about the Devices, what specific issues resulted from the alleged "defects" in these Devices, when Verizon specifically learned of the defects, when Verizon learned that some of the Devices had not been distributed, when Verizon learned that MDM was not accessible for some of the Devices, and when Verizon learned that a number of the Devices were not being used.

Nor does the Relator offer a specific *date* or *claim* submitted to the government, *what* Verizon stated (or omitted) in those claims, or *what* contractual, statutory, or regulatory provisions Verizon might have violated by seeking reimbursement. Under the most generous reading of the Complaint, Relator has alleged that Verizon provided the School District with Devices that could have been defective and Verizon was reimbursed for some portion of that expense through federal funding. There is almost no detail at all with respect to Verizon's activities. Although the Complaint generally references a monthly billing arrangement, the Complaint fails to refer to any particular claim number, the specific date on which any claim was actually submitted, or any identifiable person responsible for submitting any claim. *See, e.g.*, *U.S. ex rel. Ernst v. HCA Healthcare, Inc.*, 2020 WL 6868775, at *4 (D. Kan. Nov. 23, 2020) (unpublished) (allegations were insufficient under Rule 9(b) where, as in this case, the relator "ha[d] not alleged the dates of submission of claims to the government, the claim numbers, the amounts of claims, or the identify of any person involved in the submission of the claims").

Additionally, Relator is not permitted to rely on general allegations lodged against Verizon as a single entity to plead viable FCA claims that naturally would have involved individual actors. Rule 9(b) requires a relator to plead with particularity, among other elements, "the *who*" of the alleged fraudulent scheme. *See Sikkenga*, 472 F.3d at 727. Consequently, the Complaint's failure to link particular false claims to particular Verizon employees, or other individual actors, dooms the Relator's claims against Verizon. *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) ("Rule 9(b) requires that a complaint set forth the identity of the party making the false statements, that is, which statements were allegedly made by whom."). Particularly, when a defendant entity is "made up of hundreds, if not thousands of employees," Rule 9(b) "[a]t a minimum ... demands that [a relator] identify the employee or employees responsible for the alleged false claims under the FCA." *U.S. ex rel. Barrick v. Parker-Migliorini Int'l, Inc.*, 2015 WL 9412537, at *4 (D. Utah Dec. 22, 2015); *see also U.S. ex rel. Brooks v. Stevens-Henager Coll.*, 305 F. Supp. 3d 1279, 1292 (D. Utah 2018) ("It is particularly important ... that the complaint make clear exactly *who* is alleged to have done *what* to *whom*") (internal quotation marks omitted).

## II.     RELATOR IS NOT AN ORIGINAL SOURCE

Even if Relator had sufficiently pleaded a violation of the False Claims Act, the Court must still dismiss the Complaint because Relator is not an original source of the information alleged in the Complaint. The public disclosure bar "compels courts to dismiss *qui tam* claims 'if substantially the same allegations ... as alleged in the action or claim were publicly disclosed,' unless the relator 'is an original source of the information.'" *U.S. ex rel. Reed v. Keypoint Government Solutions*, 923 F.3d 729, 737 (10th Cir. 2019) (quoting 31 U.S.C. § 3730(e)(4)(A)). "The Tenth Circuit has employed a four-step analysis in applying the public disclosure bar, by which the court addresses the following questions: (1) whether the public disclosure contains

allegations from one of the listed sources; (2) whether the disclosure has been made public; (3) whether substantially the same allegations from the public disclosures are made in the relator's complaint; and (4) whether the relator qualifies as an 'original source.'" *In re: Syngenta AG Mir 162 Corn Litig.*, 2016 WL 5851795, at *2 (D. Kan. Oct. 6, 2016) (citing *U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1048 (10th Cir. 2004))

To qualify as an original source, the Relator: (1) must have voluntarily disclosed to the government the information on which the allegations are based "prior to [the] public disclosure[;]" or (2) must "ha[ve] knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions" and "has voluntarily provided the information to the Government before filing an action." 31 U.S.C. § 3730(e)(4)(B). Dismissal is appropriate when "the complaint itself admits all the elements of the [public disclosure bar] by alleging the factual basis for those elements." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). Therefore, "[s]ince the FCA *requires* a court to dismiss a claim based on public disclosure, a court necessarily considers the alleged public documents in its dismissal." *U.S. ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014).

Here, the Complaint, along with publicly available material, establishes the public-disclosure bar's applicability to Relator's claim. The *sole* allegation whereby Relator attempts to allege that Verizon knew that the Devices were defective is in paragraph 9 of the Complaint. There, Relator states that "[t]he specific devices provided by Verizon were defective and known by Defendant to be defective (or should have been known by Defendant to be defective) as there were reports of multiple failures dating back to at least 2018 and which were eventually ordered to be recalled in the entirety by the U.S. Consumer Product Safety Commission." This allegation says nothing of the source of this information. It hides the source behind the passive voice, declaring

unrevealingly that "there were reports of multiple failures dating back to 2018." This foggy assertion gives no reason to suppose that Relator was the original source of this information.

Additionally, a search of the CPSC's website regarding the Ellipsis Jetpack reveals at least one incident report from 2018, where a customer complained about a Verizon device overheating, much in the same way that Relator alleges in the Complaint. The Court may consider this report without converting this Motion to a motion for summary judgment, because "information found on government websites is widely considered both self-authenticating and subject to judicial notice." *Sturgeon v. Phamerica Corp.*, 438 F. Supp. 3d 246, 259 (E.D. Pa. 2020). The customer report, dated May 10, 2018, states that the "Verizon modem Ellipsis Jetpack MHS 815 L swells to twice normal, too hot to touch, smells, shuts down. Battery is sealed inside unit. Verizon store unable to remove battery...." *See* Ex. B, available at https://www.saferproducts.gov/PublicSearch /Detail?ReportId=1766282. This customer report, dealing with a different model of the Jetpack, was revealed to the public *on a federal government* website more than two years before Verizon provided the Devices to the School District. Relator's theory suggests no more than that he saw this report and then used it as a basis for this lawsuit. *See* Compl. ¶ 25 ("Specifically, Verizon provided Ellipsis Jetpack MHS900L and MHS900LS hotspot devices, which were known to have significant overheating issues causing heat-related damage. On information and belief, the defect in the device was reported at least as early as 2018."). Further, Verizon publicly announced the recall on April 8, 2021, the day before Relator filed the Complaint. *See* Ex. C. Thus, Relator alleges Verizon "knew" the hotspot devices were defective by parroting nothing more than what the government would have already known. Relator does not identify any other fact or information supporting his proposition regarding the defect. In short, Relator fails to make any material contribution to the already publicly disclosed information. Relator's claims are therefore barred.

### III.     RELATOR FAILED TO PERFECT SERVICE OF PROCESS

Relator's failure to follow procedural requirements also mandates dismissal. Here, Relator failed to timely serve Verizon with the Complaint and failed to follow Oklahoma's service of process requirements. A Rule 12(b)(5) motion "challenges the mode or lack of delivery of a summons and complaint." *Id.* (quotation and citation omitted). The plaintiff has the burden of establishing that service was valid. *See Fed. Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir. 1992). "A motion under Rule 12(b)(5) permits a court to either quash the process or dismiss an action." *Bailey's Welding & Mach., LLC v. DEL Corp.*, 2020 WL 1811662, at *6 (W.D. Okla. Apr. 9, 2020). As such, the Court must dismiss the Complaint.

### A.     Relator Failed to Follow State Law Requirements That Service Must First Be Attempted at a Corporation's Last-Known Address

The Complaint was not properly served on Verizon because service on the Oklahoma Secretary of State, instead of Verizon, was not warranted. Fed. R. Civ. P. 4(e)(1) allows a plaintiff to effect service of process by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." In turn, 12 Okla. Stat. § 2004(C)(4) authorizes service of process on the Secretary of State only under limited and exceptional circumstances. 12 O.S. § 2004(C)(4) states in relevant part, "Before resorting to service on the Secretary of State the plaintiff must have attempted service either in person or by mail on the corporation at … the corporation's last address known to the plaintiff." This language clearly indicates a need by one to exhaust other methods of service of process "[b]efore resorting" to the mode of attempted service utilized by Relator in this case.

Here, Relator has failed to perfect service of process on Verizon. Nothing in the record indicates that Relator ever attempted to serve the summons and Complaint on Verizon at the last address known to Plaintiffs. *See* ECF Nos. 16, 18. Neither the Summons nor anything else in the

record demonstrates that Relator attempted service at (or even tried to identify) Defendant Verizon's last known address prior to serving the Secretary of State.[10] The portion of the Summons that is supposed to reflect attempted service does not specify the name of the individual who received the documents, and merely states it was served upon "The Oklahoma Sec. of State." ECF Nos. 16, 18. Without demonstrating an exhaustion of efforts prior to attempting to effectuate service on the Oklahoma Secretary of State, under 12 Okla. Stat. § 2004(C)(4), service of process on the Oklahoma Secretary of State was clearly improper. Verizon has not been served, and service on the Oklahoma Secretary of State was not properly perfected.

### B.     Relator Failed to Timely Serve the Complaint

The Complaint is due to be dismissed because the Relator did not timely serve the Complaint within 90 days, as is required under the Federal Rules. Rule 4(m), which governs the time limit for service of process in federal court, provides in part that "[i]f a defendant is not served within 90 days after the complaint is filed[,]" the Court may dismiss the Complaint if the plaintiff does not show good cause for his untimely service. Fed. R. Civ. P. 4(m). In a *qui tam* action, the 90-day period begins to run when the complaint has been unsealed. *See, e.g., U.S. ex rel. Mailly v. Healthsouth Holdings, Inc*., 2010 WL 149830, at *2 (D.N.J. Jan. 15, 2010); *U.S. ex rel. Clarke v. Healthsouth Corp.*, 2019 WL 11502531, at *1 (M.D. Fla. May 24, 2019). Here, Relator's Complaint was ordered unsealed on December 21, 2022. Relator did not serve the Secretary of State (if that service was proper) until March 30, 2023, however, and thus failed to effect timely service. Relator, therefore, bears the burden of showing good cause for his failure.

---

[10] Verizon Communications Inc. is a Delaware holding company with its business headquarters in New York. It has no registered agent for service of process. As is listed on the Oklahoma Secretary of State's website, the correct party—Cellco Partnership d/b/a Verizon Wireless—has a registered agent at 1833 South Morgan Road, Oklahoma City, OK 73128. Relator did not attempt to serve either party—or make any indication as to whether he even attempted to identify either party's last-known address in the State of Oklahoma.

Because his untimely service of the Complaint was not accompanied by a motion to serve out of time, or an explanation as to why he served it late, he cannot demonstrate good cause. The Court must dismiss the Complaint.

## IV.   THE COMPLAINT MUST BE DISMISSED AGAINST VERIZON COMMUNICATIONS INC.

Relator fails to state a claim against Verizon Communications Inc. ("VCI")—the only named Defendant in the action—because VCI is merely a holding company and was not the party engaged in the conduct alleged in the Complaint. VCI is a Delaware holding company, with its business headquarters in New York. As a holding company, VCI holds stock in its subsidiaries (both directly and indirectly), but VCI is a separate and distinct entity from those subsidiaries, and VCI does not, itself, provide any services or products to the public. *See* Ex. D, Declaration of Evgeniya Berezkina, at ¶¶ 3-6. VCI does not provide broadband services or devices, nor does it manage such services. *Id.* at ¶ 7. VCI's direct and indirect subsidiaries include operating companies that provide communications services to various customers around the country. *Id.* at ¶ 9. VCI was not involved in retaining or contracting with Oklahoma or with the OKSDOE, the Ardmore School District, or any related entities involved in the Oklahoma distance learning program. *Id.* at ¶ 13. The VCI subsidiary that did contract with the State was Cellco Partnership d/b/a Verizon Wireless. *Id.* at ¶ 10.

Although Cellco is a subsidiary of VCI, that relationship is insufficient as a matter of law to make VCI liable for any of Cellco's conduct. The Tenth Circuit has addressed this precise issue (the relationship between VCI and Cellco) in a different context. *See Birmingham v. Experian Information Solutions, Inc.*, 633 F.3d 1006, 1019-20 (10th Cir. 2011) (explaining relationship between Cellco and Verizon Communications Inc., noting that "a holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of

circumstances justifying disregard of the corporate entity."). As such, VCI is not a proper defendant (and Cellco's activity in Oklahoma cannot make VCI a proper party). VCI, then, by definition, could not have engaged in any of the actions alleged in the Complaint. As such, Relator has no claim against VCI, and the Court must, therefore, dismiss the Complaint.

## CONCLUSION

For the foregoing reasons, the Court must dismiss the Complaint with prejudice.

DATED: June 20, 2023                          Respectfully submitted,

                                              *s/ John D. Russell*

John D. Russell, OBA No. 13343
GABLEGOTWALS
110 North Elgin Avenue, Suite 200
Tulsa, Oklahoma 74120-1495
Telephone: (918) 595-4800
*jrussell@gablelaw.com*

-and-

Michael Francisco, *pro hac vice*
Charles Wm. McIntyre, *pro hac vice*
Edwin O. Childs, Jr., *pro hac vice*
Michael A. Brody, *pro hac vice*
MCGUIREWOODS, LLP
888 16th Street N.W., Suite 500
Washington, DC 20006
Telephone: (202) 857-1700
*mfrancisco@mcguirewoods.com*
*cmcintyre@mcguirewoods.com*
*echilds@mcguirewoods.com*
*mbrody@mcguirewoods.com*

COUNSEL FOR DEFENDANT
VERIZON COMMUNICATIONS, INC.

**CERTIFICATE OF SERVICE**

     I hereby certify that on June 20, 2023, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

                                   *s/John D. Russell*
                                 John D. Russell